# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 15, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BOONE COUNTY BOARD OF EDUCATION,**
**Employer Below, Petitioner**

**vs.)     No. 16-1020** (BOR Appeal No. 2051347)
                        (Claim No. 2009065047)

**ARELINE L. BASSHAM,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Boone County Board of Education, by Marion E. Ray, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review.

The issue on appeal is the appropriate amount of a permanent partial disability award to be granted as a result of the compensable injury in this claim. This appeal originated from the March 30, 2015, claims administrator's decision granting a 10% permanent partial disability award. In its May 17, 2016, Order, the Workers' Compensation Office of Judges reversed the decision and granted a 32% permanent partial disability award. The Board of Review's Final Order dated September 27, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Areline L. Bassham, a school teacher, suffered an L1 compression fracture when she fell and struck her back in the course of her employment on October 15, 2008. Ms. Bassham underwent kyphoplasty and while recuperating in the hospital developed a kidney infection and had to be catheterized. Ms. Bassham began having difficulty urinating following the surgery and was unable to completely void her bladder.  Her symptoms progressively worsened and Ms. Bassham sought treatment from Lawrence Wyner, M.D. Ms. Bassham was scheduled for a Urodynamic Evaluation which was performed and the report noted that Ms. Bassham "strains to void." Ms. Bassham also

underwent an ultrasound which documented no evidence of urinary retention but stated that the bladder was collapsed, as it had been recently emptied by catheterization.

After evaluation, Dr. Wyner diagnosed sensory neurogenic bladder and completed a Diagnosis Update requesting that the condition be added to the claim. The claims administrator denied adding neurogenic bladder to the claim on November 21, 2013. The Office of Judges reversed the claims administrator's decision on January 30, 2015, and remanded the claim to the claims administrator to refer Ms. Bassham for an independent medical evaluation concerning the condition. Ms. Bassham underwent two independent medical evaluations to determine the extent of her permanent impairment arising from the neurogenic bladder condition resulting from her compensable injury.

On March 23, 2015, Ms. Bassham underwent an independent medical evaluation performed by Robert Walker, M.D. Dr. Walker reviewed medical records and stated that the neurogenic bladder diagnosis was based on a history of urinary retention following trauma associated with L1 compression fracture. Dr. Walker opined that Ms. Bassham had reached maximum medical improvement and will need to continue infrequent monitoring and self-catheterization. Based on the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Walker placed Ms. Bassham under Table 17 in Section 4.3d, in the second category for 10% - 25% impairment. He stated that Ms. Bassham "has good bladder reflex activity, limited capacity, and intermittent emptying without voluntary control." He further stated that Ms. Bassham was able to manage her retention with regular self-catheterization and noted that she has diabetes mellitus, which may contribute to the underlying neurological deficit. Dr. Walker assessed 10% whole person impairment. The claims administrator granted Ms. Bassham a 10% permanent partial disability award based on Dr. Walker's report.

On August 8, 2015, Ms. Bassham underwent an independent medical evaluation performed by Bruce Guberman, M.D. Dr. Guberman reviewed the medical records and stated that Ms. Bassham has to self-catheterize regularly. Ms. Bassham stated that she uses the catheter when she has a feeling of bladder fullness and lower abdominal pain. She denied nocturia or bedwetting but stated that if she waits too long to catheterize, she has leakage and dribbling. Using Table 17 of the American Medical Association's *Guides*, Dr. Guberman placed Ms. Bassham in the third category which states "the patient has poor bladder reflex activity, and intermittent dribbling and no voluntary control." He stated that she is unable to pass her urine on her own and must self-catheterize in order to empty her bladder. He assessed 32% whole person impairment. Dr. Guberman stated that Dr. Walker opined that Ms. Bassham "has good bladder reflex activity, limited capacity, and intermittent emptying without voluntary control." Dr. Guberman disagreed with that finding because Ms. Bassham had no voluntary control of her bladder since she has to catheterize herself.

The Office of Judges rendered its decision in an Order dated May 17, 2016. The Office of Judges noted that little explanation had been provided surrounding the Urodynamic Evaluation and ultrasound, and no commentary regarding the significance of either report was provided. The difference between the impairment ratings provided by the two evaluating physicians is that Dr. Walker concluded that Ms. Bassham had good bladder reflex activity whereas Dr. Guberman

found poor bladder reflex activity. However, bladder reflex was not defined by either physician, nor was an in depth analysis between the different categories provided. Both physicians seemed in agreement that Ms. Bassham was unable to void her bladder and thus must self-catheterize. Also, Drs. Walker and Guberman seemed to agree that Ms. Bassham was able to manage her retention with regular self-catheterization. Neither physician apportioned their findings. The Office of Judges concluded that the reports of Dr. Walker and Dr. Guberman were of equal evidentiary value and that as Dr. Guberman's report was most consistent with Ms. Bassham's position, it would be adopted. Therefore, the Office of Judges reversed the claims administrator's decision granting a 10% permanent partial disability award and granted a 32% permanent partial disability award based on Dr. Guberman's report. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 27, 2016.

We agree with the conclusion reached by the Office of Judges and Board of Review. The Office of Judges has determined that the reports of Dr. Guberman and Dr. Walker are of equal evidentiary value. After reviewing the record, it appears that the Order of the Office of Judges granting a 32% permanent partial disability award is supported by the evidence of record. Therefore, the Board of Review's Order affirming the decision is not clearly wrong.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 15, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENT:**
Justice Elizabeth D. Walker

WALKER, J., dissenting:

The Office of Judges (OOJ or ALJ) failed to conduct a de novo review of the entire record in this case and ensure that the permanent partial disability award was based upon reliable

evidence.  The Board of Review further failed to hold the OOJ to even a minimal standard of meaningful review of the record containing legal conclusions consistent with statutory law.  For these reasons, I respectfully disagree with my colleagues and would reverse the Board of Review's order granting a 32% permanent partial disability award.

The OOJ decision violates the statute mandating that a permanent partial disability award be based solely upon whole body medical impairment excluding any pre-existing condition.[1]  The medical evidence in the record shows that the claimant sought treatment prior to her injury, yet the ALJ neither discussed the specific medical records documenting this pre-injury treatment nor discounted the reliability of the IME reports in light of their failure to address this significant information and specifically apportion the award accordingly.

Instead of exercising its power to remand the claim for a determination of pre-existing impairment, the Board undertook the same cursory review of the evidence.  I find this troubling particularly given the sizable difference in the percentage of the ratings between the two IME physicians, neither of whom are urologists.  To support a decision to increase the permanent partial disability award by 22%, the Board and the OOJ should have been certain that the evidence unequivocally supported this increase.  To the contrary, Dr. Guberman's report, which is relied upon to increase the award, does not contain detailed findings addressing pre-existing treatment and possible pre-existing permanent whole body medical impairment.

What I find most egregious, however, is the Board's failure to address the ALJ's blatant disregard for the statute requiring a weighing of all the evidence and abolishing the "rule of liberality."[2]  Even though the ALJ found that the two IME reports in the record did *not* provide sufficient information and analysis to support their respective calculations of whole body medical impairment, the ALJ nonetheless found each report of equal weight and ultimately concluded that the permanent partial disability for neurogenic bladder must be increased by 22% for a total award of 32%.  The ALJ's approach is tantamount to a de facto application of the "rule of liberality," which is no longer the law in West Virginia.

When an ALJ finds as a matter of fact that neither of two reports meets the necessary threshold of reliability,[3] then he or she is bound to do that which "may be necessary for a full and complete disposition of the case," which includes remanding the claim.[4]

I would have reversed the Board's order with directions to remand the claim to the OOJ for further development of the facts.  This could have included an additional IME conducted by a qualified urologist or further factual development as necessary to ascertain a credible and reliable whole body medical impairment for the claimant's neurogenic bladder.

---

[1] West Virginia Code §§ 23-4-6i & 23-4-9b.
[2] W.Va. Code §23-4-1g.
[3] W.Va. Code §23-4-6i.
[4] W.Va. Code §23-5-9(e).